## SANDERS *v.* BROWN.

Opinion delivered October 8, 1898.

1. JURISDICTION—LIEN ON LAND.—A suit for the recovery of a sum less than $100 is within the original jurisdiction of the circuit court if it involves the decision of the question whether the amount sued for is a lien upon land. (Page 501.)

2. COVENANT AGAINST INCUMBRANCES—LOCAL ASSESSMENTS.—Under Sand. & H. Dig., § 5335, an assessment for a local improvement within a city, though payable in several annual instalments, constitutes a lien upon the lands affected from the date of the ordinance providing for it, and is covered by a covenant against incumbrances. (Page 502.)

3. TAX.—LOCAL ASSESSMENT IS NOT.— A local assessment is not a "tax," within an exception in a covenant of warranty of the taxes for a certain year. (Page 503.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

*Carmichael & Seawel*, for appellant.

This is an action on a personal covenant, and does not involve the *title* to land. 1 Ark. 313; 7 Ark. 132. Hence the justice had jurisdiction to try it, even though, in determining the suit, he had to examine questions touching the title to land. Murfree, Jur. Just. §§ 200, 374 and 178; 52 Mich. 50; 48 Mich. 175; 40 Ark. 78; 63 N. W. 920; 54 Ark. 16; 55 Ark. 147; Const. § 40, art. 7; Sand. & H. Dig., §§ 4317–22. The amount in controversy being only $61, the circuit court had no jurisdiction. 37 Ark. 120; 35 Ark. 287; 24 Ark. 177; 47 Ark. 241; 38 Ark. 200. Each yearly assessment became a lien on the property on the day on which it began to run. 74 N. Y. 183; 17 N. Y. 383; 95 N. Y. 373; 32 Pa. St. 287; 36 Cal. 104; 21 Iowa, 570; 33 Cal. 292; 12 N. Y. 140, and cases cited. The date of the contract, and not of the deed, governs. 34 N. W. 286. Following the general rule as to taxes, the lien did not attach until December, 1893, which was after the contract. Sand. & H. Dig., § 6555; 35 Ark. 348. The case was once dismissed on its merits; and hence its issues were *res judicatæ*, and the appellant should have been allowed to prove such dismissal. 2 Black, Judg. §§ 722, 724, and cases cited.

*Rose & Coleman*, for appellee.

The assessment became a lien from the date of the ordinance. The word "taxes" does not include assessments for local improvements. Cooley, Tax. 207, and cases; 11 R. I. 381; 37 English Rep. 630; 2 Leigh, 178; 84 N. Y. 108; 48 Ark. 370; 56 Ark. 337. The issue in this case was whether the assessment was a lien upon the lands conveyed. Hence the circuit court had jurisdiction. 31 Ark. 486. As the' justice had no jurisdiction, a dismissal on that ground did not bar a a subsequent action in the circuit court. Const. art. 7, § 40; 44 Ark. 484; 31 Ark. 486; 43 O. St. 530; 31 N. E. 882.

BUNN, C. J.   By deed dated January 1, 1894, for the consideration of $16,000 cash, therein expressed, Brown purchased of Sanders lots No. 10, 11 and 12, and the north half of lot No. 9, in block 125, in the city of Little Rock, the same at the time and since the 18th March, 1890, forming a part of street grading improvement district No. 24, upon all the real property in which the city council, under existing laws, had assessed five years' improvement tax, to be paid in annual instalments of one per centum each, the instalments in the present instance each amounting to the sum of $61.   The defendants claim that the trade, afterwards consummated by the execution and delivery of the deed as aforesaid, was really made in November, 1893.   The warranty clause of the deed is as follows, to-wit:   "And we hereby covenant with the said B. J. Brown that we will forever warrant and defend the title to said lands against all lawful claims whatsoever, except the taxes of the year 1893, which the grantee is to pay."   After the formation and organization of the improvement district, to-wit: on the 14th April, 1890, the city council assessed the real property therein as aforesaid.   The last of the five assessments or instalments was due on the first day of June, 1894, which the defendant and warrantor refused and failed to pay, and which the plaintiff was compelled to pay, and did pay.   Presumably this last instalment was for the time between June 1, 1893, and June 1, 1894.   At least that seems to be the contention of the defendant; and, if so, he contends it was covered by the exception in the covenant as being the taxes of 1893, unless the word "taxes," in fact and in truth, has no reference to improvement district assessments.

The defendant having failed to pay said last assessment, due 1st June, 1894, as aforesaid, the plaintiff on the 23d June, 1894, paid the same, as he claims, under compulsion, which appears to be true, to M. L. Volmer, the collector of said district.   On 23d June, 1894, plaintiff sued defendant for the $61 so paid by him as aforesaid before Tom Parsel, Esq., one of the justices of the peace of Pulaski county; and on the 11th July, 1894, the return day, the cause was submitted to the court sitting as a jury, and the same was taken under advisement until the 16th July, when the court rendered judgment.

for plaintiff, as against defendant, for the amount claimed; and on the 23d July, defendant filed his affidavit and bond, and took an appeal to the circuit court.

On appeal, a general demurrer to the complaint was interposed by the defendant, on the ground that the justice of the peace had no jurisdiction to hear and determine the cause, and that, consequently, the circuit court on appeal was without jurisdiction; and this demurrer was sustained, and, on failure of the plaintiff to plead over, the cause was, on a subsequent day, dismissed at plaintiff's cost. On the 1st day of December, 1896, the plaintiff brought suit against the defendant upon the same cause of action as previously in the justice of the peace court.

The answer of defendant in substance raises the following issues of fact, viz.: whether the sale of the lots was made on the 9th November, 1893, or the 1st July, 1894; and, if the former, whether the assessment sued for was at that time a lien on the lots; and the following issues of law: whether the word "taxes" in the exception in the warranty includes improvement assessments; and whether, as contended by defendant, the former proceedings in justice of the peace court, and on appeal therefrom, were *res judicatœ*, and estopped the plaintiff from a recovery in this action.

On the trial, over the objection of defendant, the court excluded from the jury the record of the proceedings in the justice of the peace court, and on appeal therefrom, except the bench docket entries of the circuit judge, showing the disposition of the case therein, which it allowed to to go to the jury; also the collector's receipt, at the instance of the plaintiff and over the objection of the defendant. Thereupon the court directed the jury to return a verdict for plaintiff for the amount claimed; the defendant excepted, and filed his motion for new trial, which being overruled, he appealed.

The circuit court had jurisdiction to hear and determine this cause, notwithstanding the amount claimed is less than $100, for the reason that the question whether or not the amount claimed was a lien on real estate was raised by the defendant, and a justice of the peace cannot determine that question. Constitution, art. 7, § 40.

The improvement district was duly organized in March,

1890; and immediately the commissioners assessed the property therein at the rate of five per centum, to pay the expenses of the same; and this assessment became at once a lien on the property so assessed, which could be only satisfied by a full payment of the whole amount thus to be expended. It is true this assessment, under the statute, could only be paid in annual instalments, neither of which should exceed one per centum of the assessed value of the property, and, consequently, the whole assessment necessarily ran over a period of five years; yet this provision was merely for convenience, and to distribute the burden over a space of time greater than one year. See Sand. & H. Dig., §§ 5334 and 5335. And if the amount so raised by these partial payments under this general assessment was found to be, at the end of the five years period, insufficient to pay the expenses of the improvement or money borrowed therefor, then, on proper showing, the lots could be held further. On this subject the statute is as follows, to-wit: "Sec. 5366. If the assessment first levied [meaning for the whole estimated costs of the improvement] shall prove insufficient to complete the improvement, the board shall report the amount of the deficiency to the council, and the council shall thereupon make another assessment on the property previously assessed, for a sum sufficient to complete the improvement, which shall be collected in the same manner as the first assessment"—that is, in annual instalments, if the assessment amounts to more than one per centum of the value of the property.

It makes no difference whether we denominate the lien one lien for the whole amount of estimated costs, or split it up into annual instalment liens, and call each one a lien; for the statute makes the lien, or the aggregation of liens, relate back and commence from the passage of the ordinance organizing the district, and thus every one of the annual instalments remaining unpaid at the time of the execution of the deed and the covenant against incumbrances was a lien for so much, and was covered by the covenant. Burroughs, Taxation, under head of "liens," pp. 488, *et seq.*, gives some general idea of the nature of this lien. Such is the position assumed in *Blackie* v. *Hudson*, 117 Mass. 181. A seemingly contrary doctrine is put forth in *Dowdny* v. *Mayor, etc., of New York*, 55 N. Y. 186; but the distinction

grows out of the difference in the relative dates of the creation of the lien or that from which it begins to exist. Under the peculiar statute of New York, the date from which the lien existed was the matter in controversy. Our statute settles this.

The warranty was against incumbrances, but it contained an exception expressed in the following language, to-wit: "Except the taxes of the year 1893, which the grantee is to pay." This is the year for which the assessment in controversy was made, the same being due July 1, 1894. The plaintiff contends that the word "assessment" is not included in the word "taxes," but that the two mean different things; and in this we are of opinion that he is correct. *McGehee* v. *Mathes*, 21 Ark. 41. The "assessment" sued for, not being covered by the exception to the warranty, the plaintiff was not bound to pay the same, but the defendant was, under the warranty.

This disposes of all the questions raised. The judgment is affirmed.